UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| RICKEY ALLEN FRAZIER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Nos. 2:04-CR-52-JRG-1 |
| ) | 2:16-CV-16-JRG |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 33].[1] Petitioner bases his request for relief on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*]. The United States responded in opposition to the pro se petition on February 24, 2016 [Doc. 35], and the supplemented petition on May 23, 2016 [Doc. 43]. Petitioner replied in turn on March 28, 2016 [Doc. 36], and July 6, 2016 [Doc. 46]. Also before the Court is FDSET's motion for leave to amend the petition [Docs. 38, 39, 40]. For the reasons that follow, FDSET's request for leave to amend [Doc. 38] will be **GRANTED** and Petitioner's supplemented § 2255 petition [Docs. 33, 39, 40] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

---

[1] Petitioner filed a pro se petition for collateral relief on January 28, 2016 [Doc. 33]. On February 11, 2016, this Court appointed Federal Defender Services of Eastern Tennessee (FDSET) to investigate whether or not Petitioner is entitled to collateral relief in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). E.D. Tenn. S.O. 16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET filed a motion to amend [Doc. 38], and two supplements [Docs. 39, 40].

In 2005, Petitioner pled guilty to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) [Doc. 14]. Based on four prior Tennessee convictions, the United States Probation Office deemed Petitioner to be an armed career criminal subject to the ACCA's fifteen year mandatory minimum [Presentence Investigation Report (PSR) ¶¶ 25, 33, 37, 38]. Consistent with that designation, this Court sentenced Petitioner to 235 months' imprisonment on May 12, 2005 [Doc. 21]. Petitioner appealed, but the Sixth Circuit affirmed his conviction and sentence on September 20, 2006 [Doc. 28].

Over six years later—on January 28, 2016, Petitioner filed the instant petition for relief based on the *Johnson* decision [Doc. 33 (challenging ACCA designation)]. Consistent with their obligations under this Court's Standing Order, FDSET filed two supplements [Docs. 39, 40].

## II.  REQUEST FOR LEAVE TO AMEND

Several months after Petitioner filed the pro se petition challenging his ACCA designation, counsel filed a motion for leave to file a supplement in support of that claim [Doc. 38]. The Federal Rules of Civil Procedure provide that leave to amend should "be freely given when justice so requires." Fed. R. Civ. P. 15(a). Relevant factors include "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Anderson v. Young Touchstone Co.*, 735 F. Supp. 2d 831, 833 (W.D. Tenn. 2010) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1965)). For good cause shown, FDSET's motion is **GRANTED**.

## III.  SUPPLEMENTED PETITION FOR COLLATERAL RELIEF

### A.  Standard of Review

2

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

**B.     Analysis**

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent

3

felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015).

The validity of Petitioner's sentence thus depends on whether three or more of his prior convictions qualify as "serious drug offenses" under § 924(e)(2)(A) or, in alternative, "violent felonies" under one of the unaffected provisions of § 924(e)(2)(B). *See, e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where conviction qualified as a predicate offense independent of the residual clause), *overruled on other grounds by Mathis v. United States*, 136 S. Ct. 2243, 2251 n. 1 (2016). To determine whether a particular offense qualifies as a violent felony under any of the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," under which they look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative versions of the crime—courts resort to the "modified categorical approach" under which they "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281.

The Court finds that at least three of the prior convictions used to categorize Petitioner as an armed career criminal—the 1981 second-degree burglary, 1982 third-degree burglary, and 1985 voluntary manslaughter—categorically qualify as predicate offenses independent of the

4

residual clause invalidated by the *Johnson* decision.[2]  As such, no award of collateral relief is warranted.

At the time that Petitioner committed his burglary offenses, Tennessee defined second-degree burglary as the breaking and entering into a dwelling house or any house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging by day, with intent to commit a felony.  Tenn. Code Ann. § 39-903 (1981); *State v. Moore*, 614 S.W.2d 348, 351 (Tenn. 1981).  Tennessee defined third-degree burglary as "breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony," Tenn. Code Ann. § 39-3-404(a) (1982), and, in a separate subsection, provided enhanced penalties for "any person who, with intent to commit a crime, breaks and enters, either by day or by night, any building whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by any means," Tenn. Code Ann. 39-3-404(b) (1982); *see also Church v. State*, 333 S.W.2d 799, 806 (Tenn. 1960) (quoting the relevant provisions).[3]  Petitioner's conviction involved the subsection (a)(1)—burglary of a building, not subsection (b)—safecracking [PSR ¶¶ 33, 37].  *See Hill v. United States*, No. 4:16-

---

[2]   Petitioner does not contest the accuracy of the information contained in his presentence report, but only the propriety of the Court's decision to use the predicate offenses listed therein as grounds for ACCA enhancement.

[3]   Tennessee revised its burglary statutes on November 1, 1989, as part of the State's comprehensive criminal code revision.  *See, e.g.*, *State v. Langford*, 994 S.W. 2d 126, 127–28 (Tenn. 1999).  The pre-1989 version of the Tennessee Code criminalized six types of burglary offenses: (1) first-degree burglary, Tenn. Code Ann. § 39-3-401 (1982); (2) breaking after entry, Tenn. Code Ann. § 39-3-402 (1982); (3) second-degree burglary, Tenn. Code Ann. § 39-3-403 (1982); (4) third-degree burglary, Tenn. Code Ann. § 39-3-404(a)(1) (1982); (5) safecracking, Tenn. Code Ann. § 39-3-404(b)(1) (1982); and (6) breaking into vehicles, Tenn. Code Ann. § 39-3-406 (1982).  Tennessee law now prohibits only three types of burglary: (1) burglary, Tenn. Code Ann. § 39-14-402 (2016); (2) aggravated burglary, Tenn. Code Ann. § 39-14-403 (2016); and (3) especially aggravated burglary, Tenn. Code Ann. § 39-14-404 (2016).

cv-75, 2016 WL 6892764 (E.D. Tenn. Nov. 22, 2016) (holding that burglary-of-a-building and safecracking are distinct crimes and, as a result, that the pre-1989 third-degree burglary statute is divisible under *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)).

For purposes of § 924(e), the Supreme Court defines "burglary" as any conviction, "regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). Both of Petitioner's prior burglary convictions correspond perfectly with *Taylor*'s definition. *See, e.g.*, *United States v. Taylor*, 800 F.3d 701, 719 (6th Cir. 2015) (confirming, post-*Johnson*, that Tennessee third-degree burglary is categorically a violent felony under the enumerated-offense clause); *United States v. Jones*, 673 F.3d 497, 505 (6th Cir. 2012) (holding that pre-1989 Tennessee second-degree burglary categorically qualifies as generic burglary and is, thus, a violent felony under the enumerated-offense clause).[4]

For purposes of § 924(e)(B)(2)(i), "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010). At the time that petitioner committed the offense, the Tennessee Supreme Court defined voluntary manslaughter as follows:

---

[4] In *Mathis v. United States*, 136 S. Ct. 2246 (2016), the Supreme Court held that a prior conviction cannot qualify as a generic form of a predicate violent felony if a locational element of that crime is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former. Unlike the Iowa statute at issue in *Mathis*, however, the Tennessee statutes at issue here do not contain any "alternate ways of satisfying a single locational element" that fall outside *Taylor*'s definition of generic burglary. Rather, the phrases "dwelling house or any house, building, room or rooms therein" and "business house, outhouse, or any other house of another, other than a dwelling house" align with generic burglary's elemental requirement that the breaking or entering be of a "building or structure." As such, *Mathis* has no impact on the Court's ability to categorize second-degree and third-degree burglary convictions as violent felonies under the enumerated-offense clause.

6

>    Prior to November 1, 1989, the effective date of Tennessee's comprehensive revision of the criminal code, Tennessee law provided that an unlawful killing "with malice aforethought, either express or implied," constituted the offense of murder. Tenn. Code Ann. § 39-2-201 (1982) [repealed]. If the murder was "perpetrated by means of poison, lying in wait, or by other kind of willful, deliberate, malicious and premeditated killing" or was committed during the commission of a felony, the killing constituted first-degree murder. *Id.* § 39-2-202(a) [repealed]. All other murders were deemed second-degree murder. *Id.* § 39-2-201(a) [repealed]. Under the pre 1989 criminal code, manslaughter was defined as "the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act." *Id.* § 39-2-221 [repealed]. In addition, case law stated that voluntary manslaughter was "the unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man, and thus negative malice." *Smith v. State*, 370 S.W.2d 543, 545 (Tenn. 1963).

*State v. Williams*, 38 S.W.3d 532, 536 (Tenn. 2001). The above definition for manslaughter is divisible because it is listed in the disjunctive—voluntary upon a sudden heat or involuntary, but in the commission of some unlawful act. To the extent that Petitioner argues that the definition is indivisible because "the Tennessee Supreme Court define[s] the specific elements of voluntary manslaughter as a single . . . offense" [Doc. 39 p. 8], the Court disagrees. In fact, listing the elements of "voluntary manslaughter" does the opposite: it confirms that that offense is divisible, i.e., has distinct elements, from involuntary manslaughter. Petitioner's indictment and judgment demonstrate that he was convicted of the voluntary variant—unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of any ordinary man [Docs. 43-1, 43-2].

In *United States v. Anderson*, the Sixth Circuit held that the intentional killing of another person necessarily requires the use of force capable of causing physical pain or injury to another, i.e., violent physical force. *See* 695 F.3d 390, 400 (6th Cir. 2012) ("We hold that one can knowingly cause serious physical harm to another only by knowingly using force capable of

7

causing physical pain or injury, i.e., violent physical force." (internal quotations omitted)); *see also United States v. Evans*, 699 F.3d 858, 863 (6th Cir. 2012) ("One can knowingly cause or attempt to cause physical harm—i.e., physical injury—to another only by knowingly using or attempting to use physical force—i.e., force capable of causing physical injury."). In light of the *Anderson* decision and because voluntary manslaughter by definition requires the intentional killing of another, the Court finds that Petitioner's 1985 manslaughter conviction categorically qualifies as a violent felony under the ACCA's use-of-physical-force clause. *See Nelson v. State*, 65 Tenn. 418, 421(1873) (distinguishing involuntary manslaughter from voluntary manslaughter on the grounds that the former occurs "where it plainly appears that neither death or any bodily harm was intended, but death is accidentally caused by some unlawful act"); *see also United States v. Jackson*, No. 15-3982, 2016 WL 3619812, at *2 (6th Cir. July 1, 2016) (finding that Georgia voluntary manslaughter requires "proof that a person 'cause[d] the death of another human being under circumstances that would otherwise be murder," necessarily involves proof that the individual used force capable of causing physical pain or injury); *United States v. Collins*, 799 F.3d 554, 597 (6th Cir. 2015) ("[C]rimes which require proof of physical injury necessarily have 'as an element the use, attempted use, or threatened use of physical force against the person of another' and thus qualify as crimes of violence under the 'elements' clause of the ACCA.").

The Court is unpersuaded by Petitioner's reliance on *Capps v. State*, 478 S.W.2d 905 (Tenn. Crim. App. 1972), for the proposition that voluntary manslaughter is capable of commission without violence because Tennessee defined "passion" as "fear, terror, excitement, or nervousness" instead of "force, anger, brutality, or frustration" [Doc. 39 pp. 8–9]. The Sixth Circuit explained in the *Anderson* decision that "it does not matter that [a] statute [which requires

8

proof of serious physical injury] does not contain a stand-alone physical force element because proof of serious physical injury or pain under the statute necessarily requires proof of violent physical force." *Anderson*, 695 F.3d at 401; *see also United States v. Gloss*, 661 F.3d 317, 319 (6th Cir. 2011) ("Any robbery accomplished with a real or disguised deadly weapon, or that causes serious bodily injury, falls under the first clause of the definition of violent felony, as it necessarily involves 'the use, attempted use, or threatened use of physical force against the person of another.'"); *United States v. Barnett*, 540 F. App'x 532, 536 (6th Cir. 2013) (finding that an Ohio domestic assault statute that did "not expressly include physical force as a stand-alone element" nevertheless qualified as a violent felony under the ACCA's use-of-physical-force clause because it required a defendant to "knowingly cause or attempt to cause physical harm to [another]"). To the extent that Petitioner argues force cannot exist without malice [Doc. 46 p. 6], he has failed to cite and the Court is unaware of any authority that might support that interpretation of violent physical force.

The Court is similarly unpersuaded by the block of cases that Petitioner cites in support of his argument that manslaughter is not a violent felony under the ACCA's use-of-physical-force clause [Doc. 39 pp. 9–11]. As an initial matter, all of the cases cited dealt with involuntary manslaughter. *See United States v. Armijo*, 651 F.3d 1226, 1233 (10th Cir. 2011) (Colorado reckless manslaughter); *United States v. Culbertson*, 389 F. App'x 515, 518 (6th Cir. 2010) (Michigan manslaughter by operating a motor vehicle with gross negligence); *United States v. Woods*, 576 F.3d 400, 410 (7th Cir. 2009) (Illinois involuntary manslaughter); *United States v. Torres-Villalobos*, 487 F.3d 607, 614 (8th Cir. 2007) (Minnesota second-degree—i.e. negligent—manslaughter); *United States v. Walter*, 434 F.3d 30, 39 (1st Cir. 2006) (Massachusetts involuntary manslaughter); *United States v. Zabawa*, 134 F. App'x 60, 64-65

9

(6th Cir. 2005) (Michigan involuntary manslaughter). Further, none of the cases on which he relies applied the Sixth Circuit's use-of-physical-force clause analysis from the *Collins*, *Evans*, and *Anderson* decisions.

Because at least three of his prior convictions remain predicates under provisions unaffected by the *Johnson* decision, Petitioner is not entitled to relief from ACCA enhancement.

## IV. REQUEST FOR CERTIFICATE OF APPEALABILITY

Section 2253 permits issuance of a certificate of appealability ("COA") where "the applicant has made a substantial showing of the denial of a constitutional right" and requires that any certificate issued "indicate which specific issue or issues satisfy [that standard]." 28 U.S.C. §§ 2253(c)(2), (3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253 is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *see also Cox v. United States*, No. 1:00-cv-176, 2007 WL 1319270, at *1 (E.D. Tenn. May 4, 2007) (denying request for COA).

While Petitioner repeatedly suggests that the use-of-physical-force clause analysis articulated in the *Collins*, *Evans*, and *Anderson* decisions "does not comport with . . . Supreme Court precedent" and runs counter to "developing law on the issue" [Doc. 46], he fails to point to a single Supreme Court case that expressly contradicts those holdings or leads this Court to be "powerfully convinced" that that the Sixth Circuit would abandon the same if given the chance.[5] The fact that the Fourth Circuit may have adopted a different interpretation of the use-of-

---

5    *See Beard v. Whitley Cnty. REMC*, 656 F. Supp. 1461, 1471 (N.D. Ind. 1987), *aff'd*, 840 F.2d 405 (7th Cir. 1988) (explaining that district courts should only deviate from the binding authority of the Circuit in which it sits where it is "powerfully convinced that the [C]ircuit will overrule itself at the next available opportunity.").

10

physical-force clause does not obviate the otherwise settled state of Sixth Circuit law. *See Jackson*, 2016 WL 3619812 at *2 (applying use-of-physical-force clause analysis from the *Anderson* decision).

In light of the foregoing and because the settled nature of applicable law within the Sixth Circuit is not something over which reasonable minds could disagree, no COA will issue.

## V. CONCLUSION

For the reasons discussed, FDSET's request for leave to amend [Doc. 38] will be **GRANTED** and Petitioner's supplemented § 2255 petition [Docs. 33, 39, 40] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

      **AN APPROPRIATE ORDER WILL ENTER.**

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE